Application of John P. FARQUHAR and Frank F. Crandell.

Patent Appeal No. 6803.

United States Court of Customs and Patent Appeals.

July 25, 1962.

C. Russell Hale and Christie, Parker & Hale, Pasadena, Cal., for appellants.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

SMITH, Judge.

Claims 35 and 37 of appellants' application Ser. No. 443,892, filed July 16, 1954 entitled "Corrector for Image-Forming Optical Assemblies" were rejected by the examiner as "unpatentable" over the prior art. The rejection, affirmed by the Board of Appeals, was based upon a U. S. patent to Weidert, No. 1,545,869, issued July 14, 1925. It was the examiner's position that the two rejected claims were structurally met by Weidert and also that the invention defined in the claims would be obvious in view of the reference cited.

The single issue here is whether the appealed claims were properly rejected as unpatentable over the Weidert reference. For the reasons hereinafter more fully stated, we agree with the examiner and the board that the claims on appeal are obvious in view of Weidert.

Appellants' invention, while not limited to cameras, can most easily be understood if it is visualized in connection with a simple camera consisting of a lens, an image area where the light sensitive film is exposed, and an aperture selectively opened and closed by a shutter.

If an object to be photographed is visualized as consisting of an infinite number of points, each point emits or reflects light rays (a pencil of rays) in all directions. Light rays travel in straight lines and the pencil of rays from any object point strikes the lens over its entire surface. In a theoretically perfect, aberration-free lens system, the pencil of rays from each object point is refracted by the lens to converge at a point on the image area or film surface.

However, as pointed out in appellants' brief, due to *aberrations* or imperfect refraction of the light rays by the lens, the rays do not meet at a point on the image area but converge to form a distorted pattern on the image area. Such aberrations reduce the focusing or resolution power of the lens by impairing the sharpness or clarity of the resultant image. While the lens designer is concerned with several types of aberrations, e. g., comatic, astigmatic, spherical and chromatic aberration, appellants' invention is directed to minimizing only comatic [1] and astigmatic [2] aberrations.

---

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

[1] Comatic aberration is due to coma which is defined as the "spherical aberration of a lens, which results in pear-shaped elongation of point images at the

[2] See note 2 on page 888.

In a given lens system, the amount of comatic-astigmatic aberration for a pencil of rays from an object point increases as the distance of the object point from the optical axis increases. Thus, rays from an object point on the optical axis are more perfectly refracted to form a sharper image or smaller circle on the image area than are the rays from an object point farther from the optical axis.

The actual pattern of an off-axis object point on the image area as disclosed by appellants in their specification looks somewhat like a comet with a tail behind it with the distortion of the object point increasing as its distance from the optical axis is increased.

A circle drawn around the pattern formed on the image area is called the *circle of confusion* and furnishes a guide for the lens designer. Thus, in designing a lens system for a particular application, the designer picks an arbitrary value for the allowable *circle of confusion*, below which value the distortion or aberration is acceptable for the particular application. If this value is $K_c$,[3] then an image pattern of such a point furthest removed from the optical axis may have a *circle of confusion* larger than $K_c$ which is unacceptable and must be corrected, while image patterns close to the optical axis have a *circle of confusion* smaller than $K_c$ and are thus acceptable. The line separating the areas of acceptable and non-acceptable image patterns is described in appellants' specification as the "juncture between the central and the peripheral zones."

As stated in the specification:

"The present invention improves images subjected to comatic and as-tigmatic aberration by the use of an optical mask to intercept only those light rays which form the tails of the smeared images thus improving the definition and sharpness of the composite image. Depending upon the type of aberrations involved, an optical mask is positioned around the optical axis adjacent the aperture of the optical system, either in front of the aperture or behind it, and in some cases in both positions."

Appellants' mask is so placed relative to the lens that it blocks out the light rays which form an image pattern larger than $K_c$ and passes only the rays which form an image pattern which lies within the limits of the acceptable *circle of confusion*, $K_c$. Appellants assert that proper positioning of the mask with respect to the lens is critical since only the unwanted light rays which create the image outside of the acceptable *circle of confusion* are to be blocked and that it is desirable to pass the greatest possible number of light rays which will create images inside of the acceptable *circle of confusion*, ($K_c$). Otherwise, as appellants point out, the total light energy is too greatly diminished and in a photographic camera, for instance, the light sensitive film would be underexposed at its outer edges.

Appealed claim 35 defines appellants' invention as follows:

"35. In an optical system, the combination comprising an image forming optical assembly having an optical axis, an image area of fixed boundaries and an object area, and an aperture, the optical assembly being subject to extra-axial aberra-

periphery of the field." Modern Science Dictionary, compiled by A. Hecktlinger, Published 1959, Franklin Publishing Company, Inc. *Also—coma:—*a blur of light from and partly around an image produced by a lense, caused by lateral spherical aberration." Webster's New International Dictionary (Unabridged), 2d Ed.

2. *Astigmatism—*1. Optics-a defect of an optical system, as a lens or mirror, in

consequence of which rays from a single point of an object fail to meet in a single focal point, thus causing the image of a point to be drawn out into a line and the images of lines having a certain direction to be less distinct than those of lines transverse to that direction. Webster's New International Dictionary, 2d Ed.

3. "$K_c$" is the symbol used in appellants' specification indicating the diameter of the *circle of confusion*.

tions which result in point sources of light in the object area from which a pencil of rays filling the aperture are directed being focused in a circle of confusion in the image area, the circle of confusion being discernably greater in a peripheral zone of the image area than in a central zone, the juncture between the central zone and peripheral zone being defined as the locus of the point source images in the image area having a maximum acceptable circle of confusion, and an optical mask having an opening through which passes the optical axis, the edge of the opening in the optical mask being located in any selected axial plane at the intersection of two light rays lying in the selected plane, the first of the two rays being defined as the ray from a point source in the object area whose principal ray impinges on the juncture between the central and peripheral zones in the image area, the first ray passing through the aperture at the edge thereof on the same side of the optical axis as the image of said point source, and the second of the two rays being defined as the ray from a point source in the object area whose principal ray impinges on said fixed boundary of the image area, the second ray impinging on the image area just within an acceptable circle of confusion around the impinging point of the principal ray and passing through the aperture on the same side of the optical axis as the image of said point source, the principal ray being the light ray from any point source that intersects the optical axis at the center of the aperture."

Claim 37 is substantially identical to claim 35 except that it requires the two intersecting rays to pass through the aperture on the side of the optical axis *opposite* to the points at which they impinge on the image area.

Claims 35 and 37 define the position of the aperture in the mask as an infinite number of points, each point in an *axial plane* and determined by the *intersection* of two light rays.

In its decision, the Board of Appeals relied solely on the patent to Weidert, No. 1,545,869 in affirming the examiner's rejection of the claims. In essence, Weidert added to a conventional camera assembly a fixed masking diaphragm having an aperture perpendicular to and centered on the optical axis of the lens to cut off non-corrected marginal rays of oblique light pencils which would otherwise cause chromatic aberration in the peripheral portion of the image. Weidert recognized that such a diaphragm could be positioned either in front of or behind the lens. Weidert states that the diaphragm is positioned so that:

"non-corrected marginal rays of the oblique pencils of light passing through the lens and through the adjustable diaphragm in a direction which would allow them to meet the free space of the rear wall of the camera containing the sensitive layer are cut off. The cutting off of said non-corrected marginal rays of oblique pencils having the effect that *these marginal rays are prevented from producing chromatical aberrations in the image as they would do if they were not cut off.*" [Emphasis added.]

The board agreed with the examiner that "every vestige of structure recited is as fully satisfied by the Weidert reference as it is by appellants' disclosure" and concluded by stating that "the rejection of claims 35 and 37 stated by the examiner is affirmed." The board found that the definitions of the mask opening and its location as set forth in claims 35 and 37 did not distinguish appellants' asserted invention over Weidert's masking diaphragm as shown in his camera which serves the same purpose as that asserted for appellants' mask.

The optical system "structure" recited in appealed claims 35 and 37 to which the board referred in its opinion is a com-

bination of optical elements which are recited as:

(1) An image forming optical assembly having an optical axis, which is subject to extra-axial aberration,

(2) An image area of fixed boundaries,

(3) An object area,

(4) An aperture and

(5) An optical mask having an opening through which the optical axis passes.

The claims otherwise set forth the recognized optical phenomena which give rise to the aberrations which require the selection of a permissible circle of confusion and the formation and placement of the mask relative to the optical axis.

We agree with the board that Weidert clearly shows the elements of the structure claimed in rejected claims 35 and 37. His camera is an "image-forming optical assembly" having (1) an "optical axis," (2) an "image area of fixed boundaries" corresponding to the photosensitive film, upon which broken line rays are shown to converge, (3) an "object area" in front of the lens, (4) an "aperture" in the diaphragm or adjustable lens stop, and (5) an "optical mask" having an "opening through which passes the optical axis."

Hence, the question here is whether or not the size and positioning of the mask as defined in the appealed claims patentably distinguishes appellants' invention over the structure disclosed by Weidert. We think not.

The board was correct in concluding that Weidert discloses appellants' structure and any distinctions recited in the appealed claims are merely obvious variations in design dictated by the purpose for which the optical system is to be used.

Contrary to appellants' assertion, we think Weidert's mask would correct distortion due to coma or astigmatism in the same manner as their mask, although Weidert makes no mention of these specific aberrations. However, Weidert does describe the cutting off of non-corrected marginal rays of oblique pencils of light which have the effect of producing marginal chromatic aberrations in the image if not cut off. Such chromatic aberration caused by oblique light pencils clearly comes within the broadly recited term "extra-axial aberrations" set forth in the appealed claims.

Accepting the appealed claims and appellants' assertions with respect thereto, at face value, it seems to us that appellants are asserting patentability of the claims over Weidert on the assumption that Weidert's results were accidental, not intended and not appreciated. We do not agree with the validity of that assumption. It seems to us that Weidert's disclosure not only shows the mask which acts as a corrector for his image-forming optical assembly but also discloses that such a mask cuts off the marginal rays and thus corrects what otherwise would be "chromatical aberrations" in the image.

These facts clearly distinguish the present case from the case of Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523, upon which appellants have placed reliance. In the present case, not only the structure but the *purpose for the structure* is clearly taught by Weidert. In the Eibel Process case, the court clearly stated:

" * * * we find no evidence that any pitch of the wire, used before Eibel, had brought about such a result as that sought by him, and in the second place if it had done so under unusual conditions, accidental results, not intended and not appreciated, do not constitute anticipation. * * * "

Here, we think Weidert clearly discloses the structure claimed by appellants as well as teaching the art that such structure would cut down the image distortion due to lens aberrations. Under these circumstances we do not regard Weidert's disclosure as the disclosure of appellants' invention under "unusual conditions" producing "accidental results, not intend-

ed and not appreciated," which the Supreme Court stated did not constitute anticipation.

All the structural elements of the combination as claimed in the appealed claims are found in the Weidert reference performing the same functions and operating in substantially the same way as claimed by appellants. The differences set forth in the claims on appeal as asserted by appellants do not patentably distinguish the claims over the Weidert reference. Such differences as, for example, the positioning of the mask, depend upon the arbitrary selection of values for the acceptable *circle of confusion*, etc., after which they are but matters of routine design which we think would be obvious to one of ordinary skill in this art at the time appellants made their alleged invention.

For the foregoing reasons the decision of the board is affirmed.

Affirmed.

WORLEY, Chief Judge, did not sit or participate in the decision.